PEDRO SEDITA, P. P. A. *vs.* DAVID STEINBERG ET ALS.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The circumstances under which a verdict may be directed may be variously stated as follows: where the evidence is undisputed, where the only question is one of law, where any other verdict could be properly set aside, where reasonable men cannot differ as to the result, or where more than one conclusion is not reasonably open to the jury upon the evidence.

If the owner of a thing inherently dangerous leaves it exposed or unguarded in a public place, he is liable to one who, without fault and as a natural and probable consequence, sustains an injury which is the direct result of the owner's misconduct; and the injury will not be considered too remote if, in the usual experience of mankind, it should have been apprehended.

When an owner maintains the space in front of his building in such a condition that, apparently, it is a part of the public way and there is nothing to mark the line of separation between his premises and the sidewalk, a traveler who oversteps the technical boundary of the street does not thereby, as a matter of law, become a trespasser.

Where a cause of danger to public travel exists on private land adjoining a public highway, the liability of the owner of the land for an injury resulting from it depends not upon its proximity to the line of the highway, which is merely a circumstance

1

Sedita *v.* Steinberg.

to be considered, but whether, if left in an unguarded condition, it endangers public travel.

In the present case, the jury might reasonably have found the following facts: The space between the defendants' garage building and the sidewalk proper presented, together with the sidewalk, a uniform concrete. surface, open to travelers and unobstructed by a. fence or other structure. About five feet inside the imaginary inner line of the sidewalk and about ten feet from the building, there projected, two or three inches above the pavement, the intake pipe of a large, underground gasoline tank, which, though unused for two years prior to the day in question, contained a quantity of gasoline. On that day, being the first of July, the nine-year-old plaintiff, while in the company of another boy who was performing an errand for his mother, looked through the end of the intake pipe which, for more than two months, had been unprotected by a screw-cap and was only partially plugged, mistook the gasoline which he saw in the bottom of the tank for water, and fired into the opening a toy pistol with which he and his companion had been playing. An explosion followed, causing the injuries upon which the present action was based. The trial court directed a verdict for the defendants. *Held* that the trial court erred, since the controlling issues in the case—whether or not the defendants were negligent, whether or not the plaintiff was a traveler on the highway, and whether or not he was guilty of contributory negligence—were all questions of fact. for the jury.

Argued April 13th—decided July 30th, 1926.

ACTION to recover damages for personal injuries, alleged to have been caused by the negligence of the defendants, brought to the Superior Court in New Haven County and tried to the jury before *Nickerson, J.;* the court directed a verdict for the defendant and from the judgment rendered thereon, the plaintiff appealed. *Error and new trial ordered.*

*Charles A. Watrous* and *Arthur W. Chambers,* for the appellant (plaintiff).

*Walter J. Walsh,* with whom was *John J. Sullivan, Jr.,* for the appellees (defendants).

Sedita *v.* Steinberg.

HAINES, J. An examination of the record shows that, upon the evidence before them, the jury could reasonably have found these facts: On July 1st, the day of the injury, the plaintiff, Peter, just under nine years of age, and another boy named William, slightly younger, were sent by the mother of the latter to a store to buy some articles for her. Proceeding along the concrete sidewalk upon this errand, they reached a point in front of the premises of the defendants, where the concrete was extended to the front of the buildings at Nos. 680-682 Howard Avenue. At this point, the concrete of the sidewalk proper and of the intervening space to the buildings presented an uniform surface unobstructed by a fence or any other structure. In this concrete, about five feet inside of the inner line of the sidewalk proper, was the projecting end of a pipe, three inches or thereabouts in diameter, and standing about two or three inches above the surface of the concrete, and about eight or ten feet from the building. This was the intake of an underground gasoline tank of about eleven hundred gallons capacity. The tank had not been used for about two years, but contained some gasoline, the amount being uncertain. The projecting end of the pipe was for a long time protected with a screw-cap, but on the day in question and for at least two months prior to the accident there had been no cap there, and though the pipe was partly plugged, it was open sufficiently so that the gasoline could be seen by looking down through the opening. The boys saw this gasoline, but thought it was water. The garage, in connection with which this tank had been used, had been vacant for some months. It was owned by the defendants, who also owned the dwelling-house which adjoined it. The defendants, in their brief, seem to grant the assumption, based upon the plaintiff's evi-

dence, that reasonable care on the defendants' part would have apprised them that the tank, with gasoline and explosive vapors in it, was thus open. As the boys reached this point while going upon their errand, they passed from the inner edge of the sidewalk to the vicinity of the pipe opening. They had with them a so-called "bing-bang" toy pistol, which was fired without ammunition, by acetylene gas generated by combining carbide and water in a chamber in the pistol. When fired, it produced a loud noise and a flash from the end of the barrel. The boys had taken turns firing this toy pistol, and as they reached this pipe, the plaintiff pointed the pistol into the opening and pulled the trigger, firing down into what he supposed was the water, driving down in this way whatever plug or part of a plug was in the pipe. The result was an explosion which caused the injuries to the plaintiff which are the basis of this action.

The defendants made the three-fold contention (1) that, upon the evidence before the jury, the plaintiff was a trespasser, so the defendants owed him no duty; (2) that the duty which the defendants owed, if any, was to travelers upon the highway, and the plaintiff was not a traveler; and (3) that the direct and proximate cause of the plaintiff's injuries was his own tortious act as distinguished from negligence. The trial judge seems to have shared this view, for in directing the verdict, he said to the jury: "The plaintiff, Peter, left the sidewalk used for the public and went onto the land of the defendants and there, with a pistol which he discharged into the pipe, blew out the plug therein and caused an explosion, as substantially testified to by him. In doing that he was a trespasser and the defendants owed no duty to him to keep the premises in safe condition for such use or acts by him."

A verdict may be directed where the evidence is undisputed, where the only question is one of law, where the plaintiff's evidence is such that if a verdict was rendered in his favor it would properly be set aside, where reasonable men cannot differ as to the verdict which ought to be rendered, or where more than one conclusion is not reasonably open to the jury upon the evidence. *Heringer* v. *Underwood Typewriter Co.,* 103 Conn. 675, 131 Atl. 322; *Swayne* v. *Connecticut Co.,* 86 Conn. 439, 85 Atl. 634, 647; *Robbins* v. *Hartford City Gas Light Co.,* 82 Conn. 394, 74 Atl. 113.

We are thus led to consider whether, on the construction of the plaintiff's evidence most favorable to him, the jury could lawfully have reached no other verdict than the one the court directed. The court construed the evidence to require a holding that the plaintiff did not have the status of a traveler upon the highway, but was a trespasser upon the defendants' property to whom the defendants owed no duty of care, and that his injury was the direct result of his own tortious act.

In determining the legal status of the plaintiff and the resulting duty of the defendants to him, it should be noted that the jury might have found that the space between the buildings and the curb was entirely open, and apparently open for the use of all travelers who might choose to avail themselves of it. It was all of concrete, of grade with, and not marked off from, the sidewalk proper, and about five feet inside the imaginary line of the sidewalk was the open pipe, with gas and explosive vapors below that opening and in the tank.

The defendants were chargeable with knowledge of the natural and probable consequences of maintaining such a structure in the pavement thus thrown open for public use, and of the danger of an explosion by

the dropping of a lighted match or cigarette, by the fireworks which are commonly set off in the streets at that time of year, by the play and pranks of children upon this open pavement, which by reason of its width and smoothness was a place where, in passing to and fro upon this sidewalk, their play was liable to take them; so, possibly, by the backfire of an automobile motor, and by many other not improbable happenings which might serve to ignite these inflammable gases. All these were things for the owners of this tank to take account of.

If the jury found the tank to be of this character, it would have closely paralleled the case of a gas company which negligently permitted gas to escape from a defective gas main, with the result that, when someone struck a match, an explosion resulted. The company was held responsible. *Koelsch* v. *Philadelphia Co.,* 152 Pa. St. 355, 364, 25 Atl. 522.

If the owner of a thing which is capable, in its nature, of doing injury to persons, leaves it exposed and unguarded in a public place, and one be injured, as a natural and probable consequence, without fault on his own part, the owner is responsible. The injury, however, must be the direct result of the defendant's misconduct, and it will not be considered too remote if, in the usual experience of mankind, the result ought to have been apprehended. *Lane* v. *Atlantic Works,* 111 Mass. 136, 139; *Lombardi* v. *Wallad,* 98 Conn. 510, 519, 120 Atl. 291.

The defendants deny responsibility on the ground that the tank was on their property and not within the limits of the public walk, so that, in going to this pipe, the plaintiff was a trespasser. In *Crogan* v. *Schiele,* 53 Conn. 186, 1 Atl. 899, 5 id. 673, the plaintiff was injured by reason of an unguarded opening seven feet two inches inside the line of the sidewalk, and

located on the defendant's land, being an open space between the front of the factory and the sidewalk. This space and the sidewalk were paved with brick, and were all of the same grade. While the general course of the sidewalk was indicated by that portion on each side of the defendant's lot, there was nothing to mark the exact line of separation between the sidewalk and the defendant's land. In that case, too, the trial court ruled the plaintiff was a trespasser and not a traveler upon the public highway. In holding this ruling erroneous, we said that the point was not well taken; that the entire space from the street to the building was apparently a public sidewalk and it did not appear the plaintiff knew anything to the contrary; "it will not answer for the defendant to say to the plaintiff, 'True it is that by my act there was an apparent, visible, manifest public walk which extended to my shop, but you; a stranger, must be held to know where the divisional line is, although I have so built and maintained the sidewalk that you are naturally misled thereby.'" And we added: "There is no principle of law or justice which will warrant a court in holding a person to be a trespasser who uses as a public way an apparent public sidewalk kept so by the act of the defendant, simply because he steps over the technical legal boundary line. By the construction of the walk the plaintiff, as one of the public, was told in a most emphatic way that the sidewalk extended to its full apparent width. . . . The defendant's acts would indicate, even if a person knew where the technical line of the street was, that the defendant had thrown open to the public and made a part of the public domain that part of his property covered by this extended sidewalk; and much more so as to a person who did not know where the line was. The streets of our cities, especially in the mercantile and manu-

facturing districts, are full of instances where the buildings are set on the street line, or at varying distances therefrom, with similar continued and extended pavements." See also *Lindblade* v. *United States Rubber Co.,* 102 Conn. 396, 400, 128 Atl. 707; *Ulrich* v. *New York, N. H. & H. R. Co.,* 98 Conn. 567, 568; 119 Atl. 890; *Pomponio* v. *New York, N. H. & H. R. Co.,* 66 Conn. 528, 539, 34 Atl. 491.

We cannot concur in the defendants' claim that the plaintiff had necessarily ceased to use the highway as a traveler. In *Valin* v. *Jewell,* 88 Conn. 151, 90 Atl. 36, where a tenant, in cleaning the sidewalk in front of his tenement, was injured by falling on some ice, he was held, at the time he fell, not to be a traveler. That case is not in point, and the same is true of *O'Neil* v. *New Haven,* 80 Conn. 154, 67 Atl. 487, which the defendants cite.

The facts which the jury might reasonably have found in the instant case, would bring it clearly within our ruling in the case of *Crogan* v. *Schiele,* quoted above. It could not properly be assumed by the trial court that these boys were necessarily trespassers. It was a question for the jury. It was also for the jury to find whether the plaintiff was in the lawful use of the public highway, with the legal status of a traveler.

Whether the immediate cause of the plaintiff's injury was thus removed from the realm of a tortious act, which is the character claimed for it by the defendants, or whether the facts raise the question of negligence, is therefore dependent upon the legal status of the plaintiff and the character of the structure the defendants maintained. If the plaintiff had the status of a traveler, with the rights of a traveler upon the highway, it would be necessary to decide upon the evidence whether the defendants were negligent in maintaining the open pipe and tank in the

position it was. A decision that they were must be based upon a finding that the public walk was dangerous and unsafe. That is a question of fact for a jury under proper instruction from the court.

We held in *Crogan* v. *Schiele, supra,* that the true test of liability was whether the thing maintained by the defendant could, with due regard to the rights of travelers, be left unguarded or not, and that that question depended upon whether, being unguarded, it endangered travel or not; and that proximity to the line of highway, while a circumstance to be considered, was not, of itself, controlling. *Ruocco* v. *United Advertising Corporation,* 98 Conn. 241, 245, 119 Atl. 48; *Smith* v. *Milford,* 89 Conn. 24, 31, 32, 92 Atl. 675; *Udkin* v. *New Haven,* 80 Conn. 291, 297, 68 Atl. 263; *Beardsley* v. *Hartford,* 50 Conn. 529, 538; *Norwich* v. *Breed,* 30 Conn. 535.

The decisions in Massachusetts adopt the same general rule, but emphasize somewhat more strongly the fact of the proximity to the public way. *Mellen* v. *Morrill,* 126 Mass. 545, 546; *Puffer* v. *Orange,* 122 Mass. 389, 391; *Warner* v. *Holyoke,* 112 Mass. 362, 367.

Taking the most favorable view of the plaintiff's evidence, the jury were privileged to find that here was a dangerous condition, maintained by the defendants, which would result in a serious explosion if a spark came in contact with it; that it was the duty of the defendants to exercise reasonable care to guard against such a result, and that their failure to do so was negligence. That the plaintiff, at the moment of the accident, was using the street not for the purpose of passage but in play, did not thereby render him other than a traveler upon it. It is not unlawful for children to play on the sidewalks of a city, or on the open space contiguous to and apparently forming part of it, as these children were doing. The plaintiff's con-

Sedita *v.* Steinberg.

duct in the instant case would not defeat a recovery by him unless the jury found from reasonable evidence that he was guilty of contributory negligence. Whether the other element necessary to give the plaintiff a verdict, viz., the lack of contributory negligence on the part of this boy, could also have been found, depends likewise upon the conclusions of fact drawn by the jury from the evidence. Here again, if the jury believed and most favorably construed the plaintiff's evidence, we think they might reasonably have found the boy not guilty of contributory negligence. What would have been due care on the part of an intelligent adult, might be quite different in the case of this boy. They could reasonably have found the plaintiff was less than nine years of age; his use of this toy pistol was not necessarily unlawful; he did not know of the possibility of an explosion; he supposed what he saw was water; he does not appear to have known that what he did was a wrongful or an unlawful act; he does not appear to have intended to injure the defendants' property, nor is there anything to show that he knew it was the defendants' private property; he was, conceivably, doing what would not unnaturally be expected of a reasonably intelligent child of his age. We would be unwilling to say on the evidence now before us, that the plaintiff was as matter of law necessarily guilty of contributory negligence. This, too, was a question for the jury under proper instruction from the court. *Lynch* v. *Shearer,* 83 Conn. 73, 74, 75 Atl. 88; *Wilmot* v. *McPadden,* 79 Conn. 367, 377, 65 Atl. 157.

The facts of this case do not involve the doctrine of attractive nuisance, so-called. Since the jury could reasonably have found that this open space was a practical extension of the sidewalk, or that its proximity to the public sidewalk endangered travelers thereon;

and since they might have found that the plaintiff was not a trespasser, but had the legal status of a traveler to whom the defendants owed the duty of reasonable care, it follows that the view that the plaintiff was necessarily a trespasser, to whom the defendants owed no duty, cannot be sustained, and the action of the court in directing a verdict for the defendants was erroneous.

There is error and a new trial is ordered.

In this opinion the other judges concurred.